Plaintiff seeks to have himself declared nominated as candidate of the Democratic Party for the position of member of the school board of Ward One of Red River Parish, and impleaded as defendants his opponent, A.M. Adams and the Red River Parish Democratic Executive Committee. The correctness of the result of the primary election held in said ward on September 8, 1942, as found, declared and promulgated by said committee, is attacked. The suit is essentially an election contest and under the provisions of Act No. 46 of 1940 it is mandatory that a decision by this court be rendered within twenty-four hours after submission of the case, which occurred on September 29, 1942.
The lower court sustained an exception of no cause of action and appeal was prosecuted therefrom by plaintiff.
In compliance with said Act No. 46 of 1940, we herewith hand down a decision in the case. The reasons therefor will follow in due course.
For the reasons to be hereinafter assigned, the exception of no cause of action is overruled; the judgment appealed from is annulled, avoided and reversed and this cause is hereby remanded to the lower court for further proceedings.
Costs of appeal are assessed against defendants, all other costs will await final decree in the case.
Acting on the face of the primary election returns, the Democratic Executive Committee of Red River Parish declared A.M. Adams nominated as party candidate for member of the School Board of Ward One of that parish. Within the delay fixed by statute, his only opponent, B.L. Brown, Jr., instituted the present suit, a contest of said election, wherein he alleges that but for fraud and irregularities committed by the election officers in Precincts One and Four of the ward, the returns of the election would have disclosed that he received a majority of the legal votes cast thereat, whereas the opposite appears. He does not allege the number of votes, on the face of the returns, accredited to him or his opponent, nor does he allege specifically the number of votes disclosed therefrom by which he was defeated. Plaintiff avers that in Precinct Four two persons were allowed to vote who were not legally qualified to do so because of lack of residence therein for the time required by law; and that one person was permitted to cast his ballot thereat after having received the same from the commissioners and taken it beyond the limits of the polling place. All three of these voters are named in the petition. It is not alleged for which candidate they cast their ballots, nor that these votes, standing alone, affected the election's result. So far as the petition discloses each of them may have voted for plaintiff.
The bare fact that election officials allow illegal votes to be cast does not at all strike with nullity the entire vote of the precinct involved. If this were not true nearly every election could be annulled. Beard v. Henry, La.App., 199 So. 468. Plaintiff does not appear to attach much importance to these votes. Their status now is such that they cannot possibly affect the ultimate result of the election.
The more serious attack upon the election result, primarily relied upon by the plaintiff, is that made against the returns from Precinct One of said ward. As regards this box, it is specifically alleged that "petitioner is informed and believes and so *Page 701 
believing alleges that a proper recount of the voting box, or the ballots cast in said box * * * would change the result of said election and would show that a sufficient number of the voters who cast their ballots in the said box in said election voted for petitioner to give him the Democratic nomination for member of the Red River Parish School Board from Ward One." A recount of the vote cast at Precinct One is prayed for; and it is also prayed that should such recount reveal plaintiff to have received a majority of the votes cast at said election the Executive Committee be ordered to revise and amend its proceedings and resolutions by declaring that result and to certify plaintiff's name to the Secretary of State as the party nominee for the position involved.
The exception of no cause of action was filed by defendant, Adams. In support of the exception it is contended that since plaintiff does not allege the number of votes by which, on the face of the returns, he was defeated, even though it be disclosed by a recount of the ballots that some of them were miscounted by the commissioners to plaintiff's prejudice, the court could not then determine if the number of such miscounted ballots affected the result of the election; that is, whether such ballots in number were great enough to reverse the result of the election throughout the entire ward as promulgated by the committee. And it is additionally argued that it is indispensable to an action of this character that the alleged fraud, irregularities and illegalities in the conduct of the election and/or counting of the ballots cast, sufficient to change the election's result, should be set out in detail and with particularity by the contestant; none of which, it is argued, has been done.
Plaintiff's position is that he has alleged all that the statute requires in an election contest having for its basis a demand for a recount of all or a part of the votes cast thereat, and that such allegations warrant judicial recount of the challenged box to the end that it may be definitely known if such allegations are correct. He further contends that when said votes are recounted the result thereof, after being announced, becomes evidence or is subject to be introduced in evidence on a trial of the case on its merits.
Section 86 (b) of Act 46 of 1940, so far as pertinent, reads:
"Any candidate for a nomination for any office who shall claim that but for irregularities or fraud he would have been nominated, or that he would have been entitled to enter a second primary, and shall desire to contest the election, shall present a petition to the Judge. * * * The petition shall set forth specifically, and in detail, the grounds on which the contest is based and the irregularities or frauds of which complaint is made; provided further that in addition to the procedure setforth above, the contestant or the contestee, may, on allegationon information and belief that a proper recount of any box orboxes in the municipality, district, parish or State as the casemay be would change the result of said election, require therecount of all or any specified ballot boxes. * * * It shall beunnecessary in order to obtain such recount to allege or proveany specific fraud or irregularity. * * * The Judge having jurisdiction shall name sufficient counters in order to conduct such recount, and upon the date set for the trial of the contest as hereinafter provided shall proceed in open Court to cause said boxes to be recounted and the result of such recount to be publicly announced in the court room, * * * the court shall proceed without further delay and in a summary manner to try the issue presented; and the trial shall be in open court or in chambers and no jury shall be allowed."
Neither this broad provision relating to recounting of ballots, nor any provision its equivalent, appears in any law of this state dealing with or regulating the holding and conduct of primary elections or the contest of the declared result thereof, prior to the 1940 enactment. However, in the past, courts of the state, under the general terms of Section 1420 of the Revised Statutes of 1870, did recognize and enforce the right of a contestant, under appropriate allegations, to go behind election returns and cause a recount of votes in order to ascertain and determine the honest result of the election. W.E. Auld v. J.B. Walton, 12 La.Ann. 129; C.C. Duson v. C.M. Thompson, 32 La.Ann. 861; H. McKnight v. A.V. Ragan, 33 La.Ann. 398; Gonsoulin v. Decuir et al., 121 La. 611, 46 So. 668.
The Legislature by incorporating in the general primary election law (Act 46 of 1940) the following provision, to-wit: "* * * provided further that in addition to the procedure set forth above, the contestant or the contestee may, on allegation on information and belief that a proper recount of any box or boxes in the municipality, district, parish or State as the case *Page 702 
may be would change the result of said election, require the recount of all or any specified ballot boxes, * * *" evidently intended to enlarge upon and amplify the pre-existing right of an aggrieved candidate who believed himself defrauded of a nomination because of wrongful and fraudulent canvassing and counting of votes at one or more precincts.
The above quoted provision follows immediately the general provision giving an aggrieved candidate the right to contest the result of a primary election on the usual grounds of fraud and irregularities, but in such case the act expressly requires that the contestant shall set forth specifically and in detail the grounds upon which the contest is based and the fraud and irregularities about which complaint is made. This requirement simply tracks the well established jurisprudence of the state as discussed in Beard v. Henry, supra, and cases therein cited.
But to accentuate the intention of the Legislature and to make certainty more certain in a contest based upon alleged willful miscounting of votes, it is expressly provided that in such cases: "It shall be unnecessary in order to obtain such recount to allege or prove any specific fraud or irregularity."
Of course, it goes without saying that a charge against election officers of miscalling and miscounting votes implies fraud of the rankest sort. In no sense of the word is such an infraction of the law and violation of the right of the voters as well as of the disfavored candidate, an irregularity.
In this case plaintiff has alleged as fully as it is possible for him to do, his cause of action. His allegations virtually embody the language of the statute. He is not required to do more. From the very nature of the case he cannot do more. He does not know and cannot know until a recount is had the exact number of ballots miscalled to his prejudice; but he believes, and, so believing, alleges that a sufficient number have been miscounted to defraud him of the nomination; that is, to alter the true result of the election and produce a spurious result.
In a case of this character, should an aggrieved candidate be required to allege specifically the exact number of votes of which he has been defrauded through miscounting, in order to have standing in court to ask for a recount, the right to such procedure would be an empty one. Such a rule would invite fraudulent miscounting of votes on the part of partisan commissioners with little or no means of contesting a result thereby procured. The defrauded candidate and his friends have no opportunity to witness the calling of the ballots. He must rely upon indirect facts and circumstances after the result of the count is announced to determine if he has had a square deal. Doubtless, because of this situation, the Legislature has provided a simple and easy method of ascertaining the correct vote of any box or boxes challenged by a candidate having the right to do so.
The fact that plaintiff does not allege the number of votes returned for him and also defendant in Precinct One or the majority, on the face of the returns, received by defendant, in our opinion, is not fatal to his petition, which should be liberally construed to the end that the suit be maintained and the true rights of each side be judicially determined. The correctness of the declared result is attacked. That result gives the nomination to the defendant. Plaintiff simply says to the court that the only way to ascertain the correct result of the election is to recount the ballots in one box, which he believes have to a material extent been miscounted.
The statute requires that a recount of ballots be done in open court when the case is tried. The contest and recount are integral parts of the action, and inseparable. The result of the recount in this case will constitute important evidence, whether for or against plaintiff, and will be considered on trial of the case in conjunction with the official returns of other precincts of the ward in order to finally determine the election's result. That is a province of the court.
Defendant argues that plaintiff's action is nothing more than a "fishing expedition", launched in the hope of procuring evidence to support his contest. The answer to this contention is to simply say that the statute clearly authorizes the procedure. A contest of this sort must be filed within two days after the committee has acted. An aggrieved candidate may not provoke a recount and then bring a contest suit. The two are companions toward a common end.
For the reasons herein assigned, the decree in this case was heretofore rendered.
DREW and HAMITER, JJ., concur. *Page 814